UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAURAN SMITH,                    )
        Plaintiff,              )
                               )
v.                             )Civil Action No.  06-10607-RGS
                               )
MASSACHUSETTS BAY COMMUTER      )
RAILROAD COMPANY (MBCR)         )
and MASSACHUSETTS BAY TRANS-    )
PORTATION AUTHORITY (MBTA),     )
        Defendants,            )


## DEFENDANTS' MOTION IN LIMINE #1

Now comes the defendants, Massachusetts Bay Commuter
Railroad Company ("MBCR") and Massachusetts Bay Transportation
Authority ("MBTA") (collectively "Railroad Defendants") and
respectfully requests that this Honorable court *rule in limine*
that plaintiff's counsel be ordered <u>not</u> to inform the jury in
opening or closing, that the plaintiff's burden of proof in this
FELA case is proving only the "slightest bit of negligence",
and/or that causation is "any cause no matter how slight", as
these (and similar verbiages)are misstatement of law.

The language contained in the case of <u>Rogers v. Missouri
Pacific Co.</u>, 352 U.S. 500, in which plaintiff relies, spoke to
the test of a viable <u>jury</u> case, not the standard of liability.

Moreover, the 1st Circuit and U.S. Supreme Court has
consistently made clear that a plaintiff must prove traditional

common law elements of negligence.  Moody v. Boston & Maine, 921

F2d 1 (1st Cir. 1990), Sorrell v. Norfolk Southern Railway

Company, 127 S.Ct 799 (2007). (See cases attached)

                              MASSACHUSETTS BAY
                              COMMUTER RAILROAD COMPANY
                              And MASSACHUSETTS BAY
                              TRANSPORTATION AUTHORITY,

                              By their attorney,


                              /s/Edward P. Harrington
                              Edward P. Harrington, Esquire
                              Attorney at Law
                              171 Milk Street, Second Floor
                              Boston, MA  02109
                              (617) 423-5959
                              BBO #559482



                    CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF
system will be sent electronically to the registered
participants as identified on the Notice of Electronic filing
(NEF) and paper copies will be sent to those indicated as non
registered participants on March 10, 2008 by first class mail.

                              /s/Edward P. Harrington
                              Edward P. Harrington, Esquire

# MOODY v. BOSTON AND MAINE CORP.
Cite as 921 F.2d 1 (1st Cir. 1990)

1

Angie M. MOODY, etc.,
Plaintiff, Appellant,

v.

BOSTON AND MAINE CORPORATION,
Defendant, Appellee.

No. 90–1552.

United States Court of Appeals,
First Circuit.

Heard Oct. 4, 1990.

Decided Dec. 7, 1990.

Train conductor's widow, as personal representative, brought action under the Federal Employers' Liability Act. The United States District Court for the District of Massachusetts, John J. McNaught, J., granted summary judgment for the railroad. Widow appealed. The Court of Appeals, Torruella, Circuit Judge, held that: (1) under the general negligence standard, the widow failed to show that the conductor's heart attack was a foreseeable consequence of the allegedly excessive work hours and interruptions of rest, and (2) widow failed to show that the railroad's violations, if any, of the Hours of Service Act caused the fatal heart attack.

Judgment affirmed.

1. Employers' Liability ⚖️11

Standard of liability in negligence action under Federal Employers' Liability Act is not one of absolute liability, although standard is low. Federal Employers' Liability Act, § 1, 45 U.S.C.A. § 51.

2. Employers' Liability ⚖️206

Train conductor's widow failed to show that conductor's fatal heart attack was foreseeable result of allegedly stressful work conditions, and therefore, railroad was not liable under Federal Employers' Liability Act; there was no evidence that conductor ever informed railroad of his deteriorating physical condition or complained about interruptions to his rest and increased job stress, and his only action was to submit claim for additional wages. Federal Employers' Liability Act, § 1, 45 U.S.C.A. § 51.

3. Employers' Liability ⚖️12

Railroad was not obligated to perform periodic physical examination of its employees to detect medical problems; rather, railroad was only liable under Federal Employers' Liability Act if it performed examinations negligently, having undertaken to do so. Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq.

4. Labor Relations ⚖️1368

Fact that Hours of Service Act was designed to protect public and railroad employees from danger of accidents caused by over-fatigued employees would not preclude train conductor's widow's recovery under Federal Employers' Liability Act (FELA) for violation of statutory duty for conductor's heart attack that was allegedly caused by violation; traditional negligence per se analysis does not apply if FELA is basis of liability. Federal Employers' Liability Act, § 1, 45 U.S.C.A. § 51; Hours of Service Act, §§ 1(b)(2), 2(a)(1, 2), as amended, 45 U.S.C.A. §§ 61(b)(2), 62(a)(1, 2).

5. Employers' Liability ⚖️206

Train conductor's widow failed to show that railroad's violation of Hours of Service Act caused conductor's heart attack 12 days after last alleged violation; although widow's expert referred to "the severe stress of work" as contributing cause of heart attack, expert did not refer specifically to effects of working more than 12 hours on any given day. Federal Employers' Liability Act, § 1, 45 U.S.C.A. § 51; Hours of Service Act, §§ 1(b)(2), 2(a)(1, 2), as amended, 45 U.S.C.A. §§ 61(b)(2), 62(a)(1, 2).

James F. Freeley, Jr., with whom Freeley & Freeley, Boston, Mass., was on brief, for plaintiff, appellant.

Charlene F. Clinton, Washington, D.C., with whom James Q. Shirley and Sheehan, Phinney, Bass & Green, Professional Ass'n, Manchester, N.H., were on brief, for defendant, appellee.

Before CAMPBELL and TORRUELLA, Circuit Judges, and ATKINS,[*] Senior District Judge.

TORRUELLA, Circuit Judge.

This case is before us on appeal from the district court's grant of summary judgment in favor of defendant/appellee Boston and Maine Corporation. Plaintiff/appellant Angie M. Moody, personal representative of the Estate of Leon H. Moody, brought this action against Boston and Maine Corporation under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 et seq., for the alleged wrongful death of her husband, Leon Moody. The district court found that Mrs. Moody had failed to establish an essential element in her case and that therefore summary judgment was appropriate. We affirm.

In determining whether summary judgment is appropriate, we examine the record in the light most favorable to the nonmoving party and indulge in all inferences in that party's favor. *Petitti v. New England T. & T. Co.,* 909 F.2d 28, 31 (1st Cir.1990). Mindful of this standard, we here set forth the facts in the light most favorable to the plaintiff.

Leon Moody died of a heart attack at the age of 52, on July 3, 1984, at his family campsite in Maine. At the time of his death he had been setting off "sparkler" fireworks for his grandchildren. The hospital emergency room records state the cause of death as cardiac arrest or cardiopulmonary arrest. The records also state that Mr. Moody had a history of hypertension and that he had been a smoker.

Mr. Moody had been employed by Boston and Maine Corporation for a number of years, most recently as a conductor. During June 1984, the month before Mr. Moody's death, he had begun to work an increased number of hours because of a short-term personnel shortage at Boston and Maine. Time records kept by a co-worker of Mr. Moody, Kendrick W. Holbrook, show that on ten occasions in June Mr. Moody was kept on duty for more than 12 hours at a time.[1] The last of these occasions was on June 21. Mr. Holbrook stated in his deposition that his time book accurately reflected the number of hours that Mr. Moody worked. Neither the time sheets maintained by Mr. Moody for his own personal use, however, nor the official time sheets that Mr. Moody signed and submitted to Boston and Maine, show that he was on duty in excess of 12 hours during any shift in June.

Also in June, Mr. Moody's normal starting time began to fluctuate; instead of working his usual night shift he was occasionally put on the day shift. On perhaps six occasions Mr. Moody was called at home during his off hours and informed of a change in his shift. These calls, some of which were noted on Mr. Moody's personal time records, disturbed his rest. Mr. Moody requested that Boston and Maine pay him overtime for the disrupted sleep. Boston and Maine's time records show that Mr. Moody made a claim for 5 hours, 47 minutes overtime for June 19 and June 20, 1984. This claim was denied.

Mr. Moody's last day of work was June 29. He had four days off from work before suffering the heart attack.

Mrs. Moody based her case on the theory that her husband's death was employment-related because it was caused by the long hours he had worked and the interruptions to his rest during his off-duty hours. She relies on the statement of a medical expert to the effect that Mr. Moody's heart condition was causally related to the severe stress of his work.[2] Therefore, she claims

---

[*] Of the Southern District of Florida, sitting by designation.

[1] Holbrook's time book shows that Mr. Moody worked on June 5, 12 hours 35 minutes; on June 6, 12 hours 20 minutes; on June 10, 14 hours 10 minutes; on June 12, 13 hours 15 minutes; on June 13, 12 hours 15 minutes; on June 17, 13 hours 55 minutes; on June 18, 12 hours 30 minutes; on June 19, 12 hours 30 minutes; on June 20, 12 hours 20 minutes; and on June 21, 12 hours 45 minutes.

[2] The medical expert's statement is qualified as follows: "When we analyze the issue of causal relationship in this case, we are not seeking to establish the ultimate cause of   s death, nor can we say that the work in and of itself was causative in the arteriosclerosis process."

that she is entitled to recovery under the FELA, which grants relief if the railroad's negligence contributed to the injury for which damages are sought. *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). The district court found that Mrs. Moody had failed to offer any evidence of foreseeability, which is an essential element in a negligence action, even one brought under the FELA. *Harrison v. Missouri Pac. R.R.*, 372 U.S. 248, 249, 83 S.Ct. 690, 691, 9 L.Ed.2d 711 (1963). For this reason summary judgment was entered for the defendant.

On appeal, Mrs. Moody presents two grounds for reversal of the district court's judgment. First, she argues that there was sufficient evidence of foreseeability for her general negligence claim to survive. Second, she argues that she has made out a claim for negligence per se based on Boston and Maine's alleged violation of the Hours of Service Act, 45 U.S.C. §§ 61–66.[3] We will examine each argument in turn.

## GENERAL NEGLIGENCE

[1] The FELA provides that railroad employers are liable for injuries to their employees "resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier." 45 U.S.C. § 51. The statute is broadly remedial and has been accorded by the courts a " 'standard of liberal construction in order to accomplish' Congress' objects." *Robert v. Consolidated Rail Corp.*, 832 F.2d 3, 6 (1st Cir.1987) (quoting *Urie v. Thompson*, 337 U.S. 163, 180, 69 S.Ct. 1018, 1030, 93 L.Ed. 1282 (1949)). Although the standard of liability under the FELA is low, it is not one of absolute liability. Plaintiffs must prove the traditional common law elements of negligence, including foreseeability, duty, breach and causation. *Robert*, 832 F.2d at 6. Mrs. Moody, therefore, is required to show that Boston and Maine could have foreseen that the allegedly stressful work conditions would result in injury to Mr. Moody. This foreseeability of

risk would create a duty on the part of Boston and Maine to do what it could to prevent the injury from occurring.

[2] The district court found, and we agree, that Mrs. Moody failed to make a showing of foreseeability. The record does not show that Mr. Moody ever informed Boston and Maine of his deteriorating physical condition or complained about the interruptions to his rest and increased job stress. His only action was to submit a claim for additional wages based on the disturbances. To borrow from our holding in a similar and controlling case: "Suffice it to say that in this case [Mrs. Moody] has failed to establish that [Boston and Maine] could or should reasonably have foreseen that [Mr. Moody] would suffer a heart attack from stress of which [Boston and Maine] was never informed." *Robert*, 832 F.2d at 7.

[3] Mrs. Moody's argument that Boston and Maine was negligent in failing to examine her husband periodically for medical problems fares no better. There is no requirement under the FELA that a railroad perform periodic physical examinations on its employees. *Fletcher v. Union Pac. R. Co.*, 621 F.2d 902, 909 (8th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981). An employer is only liable if, having undertaken to give physical examinations, it performs the examinations negligently. *See id.; see also Welby v. Consolidated Rail Corp.*, 671 F.Supp. 1015, 1020 (M.D.Pa.1987).

## NEGLIGENCE PER SE

In an effort to avoid the hurdle of foreseeability, Mrs. Moody alleges that Boston and Maine violated the Hours of Service Act, 46 U.S.C. §§ 61–66 ("Act"), by forcing Mr. Moody to work in excess of a twelve hour shift with inadequate intervening rest periods. As we are reviewing this case under a summary judgment standard, we take as true her allegation that the Hours of Service Act was indeed violated. This

---

3. Although the claim of negligence per se was not separately pleaded in the complaint, and the district court did not reach the issue in granting

summary judgment, we will consider it here, as it was thoroughly briefed and argued by both parties.

violation, according to Mrs. Moody, constitutes negligence per se.

[4] Under a traditional negligence per se analysis, proof of defendant's violation of a safety statute designed to protect the party who was injured against the type of injury which occurred, relieves the plaintiff from pleading the negligence elements of foreseeability, duty and breach. *Pratico v. Portland Terminal Co.*, 783 F.2d 255, 262 (1st Cir.1985); *Restatement (Second) of Torts* § 286 (1965). The Supreme Court has stated: "Sometimes the violation [of a safety statute] is described as 'negligence per se'; but we have made clear ... that that term is a confusing label for what is simply a violation of an absolute duty. Once the violation is established, only causal relation is in issue." *Carter v. Atlanta & St. A.B.R. Co.*, 338 U.S. 430, 434, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949) (citations omitted).

If the traditional standard for negligence per se applied, Mrs. Moody could not prevail because the Hours of Service Act was not designed to protect against the type of injury suffered here.[4] The Act was intended to protect the public and railroad employees from the danger of accidents caused by overfatigued employees. *Chicago & A.R. Co. v. United States*, 247 U.S. 197, 199, 38 S.Ct. 442, 443, 62 L.Ed. 1066 (1918); *Atchison, T. & S.F. Ry. Co. v. United States*, 244 U.S. 336, 37 S.Ct. 635, 61 L.Ed. 1175 (1917). It has no application to injuries suffered away from work. Cases that have allowed recovery for injuries that occurred during violations of the Hours of Service Act have uniformly involved injuries that took place on the job. *See, e.g., Jopek v. New York Central R.R.*, 353 F.2d 778, 780 (3d Cir.1965); *Welby*, 671 F.Supp. at 1020.

The limitation on recovery in traditional negligence per se cases, however, does not apply where the action is pursuant to the FELA. *Kernan v. American Dredging Co.*, 355 U.S. 426, 432–33, 78 S.Ct. 394, 398, 2 L.Ed.2d 382 (1958). "[T]he basis of liability is a violation of statutory duty without regard to whether the injury flowing from the violation was the injury the statute sought to guard against. It must therefore be concluded that the nature of the Acts violated is not a controlling consideration; the basis of liability is the FELA." *Id.* at 438, 78 S.Ct. at 401; *see also Pratico*, 783 F.2d at 263. The purpose of the Hours of Service Act is thus not an obstacle to Mrs. Moody's recovery.

But that bar is not the only one she must overcome. Although the elements of foreseeability, duty and breach are satisfied by a showing that Boston and Maine violated the Hours of Service Act, the element of causation remains. *Carter*, 338 U.S. at 434, 70 S.Ct. at 229; *Moody v. Maine Central R. Co.*, 823 F.2d 693, 695 (1st Cir.1987). In a case applying the Act, the Supreme Court stated: "It requires no reasoning to demonstrate that the general rule is that where negligence is charged, to justify a recovery it must be shown that the alleged negligence was the proximate cause of the damage." *St. L. & Iron Mtn. Ry. v. McWhirter*, 229 U.S. 265, 280, 33 S.Ct. 858, 864, 57 L.Ed. 1179 (1913). The Court continued:

[A]lthough the act carefully provides punishment for a violation of its provisions, nowhere does it intimate that there was a purpose to subject the carrier who allowed its employees to work beyond the statutory time to liability for all accidents happening during that period with-

out reference t
was attributable
over time.

*Id.* "The test for r
of causation is 'wh
with reason the co
negligence played a
est. in producing th
F.2d at 695 (quotin
556, 77 S.Ct. at 44

[5] The causatio
sent from the recore
between the last of
the Act and the dea
Moody's own expert
sation, did so in or
The expert referree
of work" as a con
Moody's heart atta
specifically to the e
twelve hours. Clea
of working over tim
connecting the accic
over time." *McWh*
33 S.Ct. at 864.
case. "plaintiff alleg
ing from a series
sures, and not from
dent' or event that
everyday experience
nect with the injury
F.2d at 696.

We do not doubt th
a genuine problem or
agree, however, with
District Court for th
Pennsylvania, which
stress is simply not
intended to be dealt
*Kraus v. Consolida*
F.Supp. 1073, 1090
*dismissed*, 899 F.2c
Mrs. Moody has faile
as to essential eleme
mary judgment was
*Celotex Corp. v. Cat*
106 S.Ct. 2548, 2557.

The judgment of
*affirmed.*

---

4. The Hours of Service Act provides that:

    It shall be unlawful for any common carrier, its officers or agents, subject to this chapter— (1) to require or permit an employee, in case such employee shall have been continuously on duty for fourteen hours, to continue on duty or to go on duty until he has had at least ten consecutive hours off duty, except that, effective upon the expiration of the two-year period beginning on the effective date of this paragraph, such fourteen-hour duty period shall be reduced to twelve hours;

    (2) to require or permit an employee to continue on duty or to go on duty when he has not had at least eight consecutive hours off duty during the preceding twenty-four hours. 45 U.S.C. § 62(a)(1), (2). The Act became effective on December 26, 1970, so the twelve hour maximum duty shift was in effect at the time of the incidents involved here. The Act also limits the definition of "employee" to "an individual actually engaged in or connected with the movement of any train, including hostlers." 45 U.S.C. § 61(b)(2).



out reference to whether the accident was attributable to the act of working over time.

*Id.* "The test for minimally adequate proof of causation is 'whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury.'" *Moody,* 823 F.2d at 695 (quoting *Rogers,* 352 U.S. at 506, 77 S.Ct. at 448).

[5] The causation element is simply absent from the record. Twelve days elapsed between the last of the alleged violations of the Act and the death of Mr. Moody. Mrs. Moody's own expert, when addressing causation, did so in only the vaguest terms. The expert referred to "the severe stress of work" as a contributing cause of Mr. Moody's heart attack, but did not refer specifically to the effects of working over twelve hours. Clearly, "beyond the proof of working over time there [must be] proof connecting the accident with the working over time." *McWhirter,* 229 U.S. at 280, 33 S.Ct. at 864. As in the similar *Moody* case, "plaintiff alleges a condition ... arising from a series of work-related pressures, and not from any traumatic 'accident' or event that jurors, as a matter of everyday experience, could causally connect with the injury alleged." *Moody,* 823 F.2d at 696.

We do not doubt that job-related stress is a genuine problem of modern-day life. We agree, however, with the conclusion of the District Court for the Eastern District of Pennsylvania, which stated: "Job-related stress is simply not the type of problem intended to be dealt with by the FELA." *Kraus v. Consolidated Rail Corp.,* 723 F.Supp. 1073, 1090 (E.D.Pa.1989), *appeal dismissed,* 899 F.2d 1360 (3d Cir.1990). Mrs. Moody has failed to carry her burden as to essential elements of her case; summary judgment was therefore appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986).

The judgment of the district court is *affirmed.*



Hamilton J. WHITING,
Plaintiff, Appellant,

v.

Henry F. MAIOLINI, et al.,
Defendants, Appellees.

No. 90-1600.

United States Court of Appeals,
First Circuit.

Heard Oct. 1, 1990.

Decided Dec. 7, 1990.

Order Jan. 7, 1991.

In a civil rights action, the United States District Court for the District of Massachusetts, Edward F. Harrington, J., treated plaintiff's motion for judgment on pleadings as motion to dismiss and then treated motion to dismiss as motion for summary judgment which it granted. Appeal was taken. The Court of Appeals, Torruella, Circuit Judge, held that treating motion to dismiss as motion for summary judgment at early stage of proceedings did not give plaintiff meaningful opportunity to respond, and, thus, disposing of case by means of summary judgment was premature.

Reversed and remanded.

1. Federal Civil Procedure ⬅1825
District court acted within its discretion in converting motion for judgment on pleadings to motion to dismiss for failure to state claim upon which relief could be granted and in treating motion to dismiss as motion for summary judgment. 42 U.S. C.A. § 1983; Fed.Rules Civ.Proc.Rules 12(b)(6), (c), 56, 28 U.S.C.A.

2. Federal Civil Procedure ⬅2533
Conversion of motion to dismiss to motion for summary judgment is inappropriate where discovery has barely begun and

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


LAURAN SMITH,                          )
        Plaintiff,                     )
                                       )
v.                                     )Civil Action No.   06-10607-RGS
                                       )
MASSACHUSETTS BAY COMMUTER             )
RAILROAD COMPANY (MBCR)                )
and MASSACHUSETTS BAY TRANS-           )
PORTATION AUTHORITY (MBTA),            )
        Defendants,                    )


## DEFENDANTS' MOTION IN LIMINE #2

ANY REFERENCE TO THIS CASE AS A *WORKERS' COMPENSATION* OR AS
PLAINTIFF'S *ONLY REMEDY* AT LAW CASE SHOULD BE EXCLUDED

This case is brought pursuant to the Federal Employers

Liability Act (FELA), 45 U.S.C., §51.  The Defendant railroad is

not covered by state workers compensation laws.  For this

reason, it is respectfully requested that this Court enter an

order precluding plaintiff's counsel from referring in any way

to the case at bar as a workers compensation case.

Under the FELA, the plaintiff may recover <u>only</u> if he/she

establishes negligence.  Consequently, this is unlike the state

workers' compensation scheme, which is a no-fault system.

Because plaintiff is an employee of defendant railroad, some

jurors may wrongfully assume that liability may be established

without a showing of negligence.

In addition, plaintiff's counsel should also be precluded from presenting evidence or argument that a railroad is <u>not</u> covered by the state workers' compensation scheme, and/or that the FELA provides the plaintiff with her <u>only</u> remedy at law.

In <u>Stillman v. Norfolk & Western Railroad</u>, 811 F.2d 834 (4th Cir. 1987)(attached), the plaintiff argued that the trial judge should have allowed her counsel to inform the jury that he would not receive workers' compensation.  The court found the argument unpersuasive:

"Stillman's ineligibility for workers' compensation benefits was completely irrelevant to the issues presented in this case, and allowing the jury to consider such information would have prejudiced the Railroads.  <u>See</u> <u>Weinell v. McKeesport Connection Railroad Co.</u>, 411 F.2d 510, 512, (3d Cir. 1969) (*statement of counsel that FELA provided plaintiff's only possible means of recovery was improper*).

In fact, the mere mention of this subject is improper in this lawsuit.  <u>Kocack v. Long Island Railroad Co.</u>, 342 F.2d 294 (2nd Cir. 1965) (holding that it is inexcusable for plaintiff's experienced trial counsel to remark "he has no compensation rights..."); <u>Snyder v. Lehigh Valley Railroad Co.</u>, 245 F.2d 112 (3rd Cir. 1957) (holding that receipt or non-receipt of workers' compensation is not an issue in an FELA case).

Since this evidence is not relevant, and would be prejudicial if admitted, exclusion of the evidence should be ordered.  FRE 401, 402 and 403.

                              MASSACHUSETTS BAY
                              COMMUTER RAILROAD COMPANY
                              And MASSACHUSETTS BAY
                              TRANSPORTATION AUTHORITY,

                              By their attorney,


                              /s/Edward P. Harrington
                              Edward P. Harrington, Esquire
                              Attorney at Law
                              171 Milk Street, Second Floor
                              Boston, MA  02109
                              (617) 423-5959
                              BBO #559482


                    CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF
system will be sent electronically to the registered
participants as identified on the Notice of Electronic filing
(NEF) and paper copies will be sent to those indicated as non
registered participants on March 10, 2008 by first class mail.

                              /s/Edward P. Harrington
                              Edward P. Harrington, Esquire

United States Court of Appeals,
Fourth Circuit.

Carl R. STILLMAN, Plaintiff-Appellant,
v.
NORFOLK & WESTERN RAILWAY COMPANY,
a corporation, Defendant-Appellee.

No. 86-1105.

Argued Nov. 11, 1986.
Decided Feb. 17, 1987.

Railroad worker brought action against railroad under Federal Employer's Liability Act. The United States District Court for the Eastern District of Virginia, Robert G. Doumar, J., entered judgment for railroad and employee appealed. The Court of Appeals, Ervin, Circuit Judge, held that: (1) in absence of exclusive control by railroad over instrumentality that injured employee, doctrine of res ipsa loquitur could not properly be applied to create inference of negligence on part of railroad in action brought under Federal Employer's Liability Act; (2) issue of railroad's negligence was for jury in action brought under Federal Employer's Liability Act; and (3) informing jury that railroad worker's only remedy was recovery under Federal Employer's Liability Act, and that employee could not receive worker's compensation benefits was impermissible.

Affirmed.

West Headnotes

[1] Employers' Liability ☞191
148Ak191 Most Cited Cases

As in negligence cases, the doctrine of res ipsa loquitur may be applied in Federal Employer's Liability Act cases to permit an inference of negligence on the part of employer. Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq.

[2] Negligence ☞1612
272k1612 Most Cited Cases
(Formerly 272k121.2(3.1), 272k121.2(3))

In order for res ipsa loquitur to be applied, three conditions must be met: the injury for which plaintiff

seeks recovery must be of a kind that ordinarily does not occur in absence of negligence; injury must have been caused by some agency or instrumentality within exclusive control of defendant; and injury must not have been due to any contribution or voluntary activity on part of plaintiff.

[3] Employers' Liability ☞191
148Ak191 Most Cited Cases

In view of employee's testimony that immediately before forklift blades fell on him, he had placed himself partially under blades and had taken hold of chain attached to blades in an attempt to free chain from blades, instrumentality which injured employee was not within railroad's exclusive control at time of accident, rather employee himself had at least partial control over chain and forklift blades, and thus doctrine of res ipsa loquitur was inapplicable to create inference of negligence on part of railroad in action brought under Federal Employer's Liability Act. Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq.

[4] Negligence ☞1620
272k1620 Most Cited Cases
(Formerly 272k121.2(9.1), 272k121.2(9))

Application of res ipsa loquitur permits, but ordinarily does not compel, inference of negligence on part of defendant, and thus, res ipsa loquitur inference of negligence can get plaintiff to jury, but it will not support a directed verdict or a judgment n.o.v. for plaintiff unless inference of negligence is so clear that no reasonable man could fail to accept it, and defendant offers no evidence to rebut inference.

[5] Employers' Liability ☞225
148Ak225 Most Cited Cases

Issue of whether it was railroad's negligence that caused employee's injury when forklift blades fell on him as he was attempting to free chains from blade was for jury in action brought by employee under Federal Employer's Liability Act, despite plaintiff's contention that doctrine of res ipsa loquitur should have been applied to allow overturning jury's verdict. Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq.

[6] Employers' Liability ☞201
148Ak201 Most Cited Cases

District court did not abuse its discretion in excluding



as irrelevant employee's testimony concerning safer, alternative way to install gears in railroad cars, in view of the fact that question jury had to decide was whether railroad had exercised reasonable care for safety of employee, not whether railroad could have employed a safer method for installing gears, in action brought under Federal Employers' Liability Act. Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq.

**[7] Federal Courts** ☞901.1
170Bk901.1 Most Cited Cases
(Formerly 170Bk901)

In view of the fact that district court never instructed jury to disregard testimony later ruled inadmissible, on safer, alternative ways to install gears in railroad cars, any error district court committed in excluding evidence in Federal Employers' Liability Act case was harmless error. Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq.

**[8] Employers' Liability** ☞213
148Ak213 Most Cited Cases

So long as jury was properly instructed on applicable law, relating to Federal Employers' Liability Act it was neither necessary nor appropriate for jury to hear argument by plaintiff's counsel about Congress' intent in enacting law. Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq.

**[9] Employers' Liability** ☞261
148Ak261 Most Cited Cases

Railroad employee bringing action under Federal Employers' Liability Act was not entitled to inform jury that his only possible remedy was under Act, and that he could not receive worker's compensation benefits, in view of the fact that ineligibility for worker's compensation benefits was completely irrelevant to issues and could prejudice railroad. Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq.

**[10] Federal Courts** ☞626
170Bk626 Most Cited Cases

Failure of plaintiff's counsel to object to district court's questioning of witness during trial precluded review on appeal. Fed.Rules Evid.Rules 614(c), 614 note, 28 U.S.C.A.

**[11] Federal Courts** ☞626

170Bk626 Most Cited Cases

In absence of objection to trial court's comments and questions during trial, none of comments or questions of district court, objected to on appeal, were sufficiently biased or notorious to permit appellate review. Fed.Rules Evid.Rules 614(c), 614 note, 28 U.S.C.A.

**\*836** Michael Lewis Weiner (Donald L. Rudquist, DeParcq, Perl, Hunegs, Rudquist & Koenig, Minneapolis, Minn., William N. Nexsen, Stackhouse, Rowe & Smith, Norfolk, Va., on brief), for plaintiff-appellant.

Douglas Tucker Jenkins, Norfolk, Va. (Edward L. Oast, Jr., William T. Prince, Williams, Worrell, Kelly & Greer, Norfolk, Va., on brief), for defendant-appellee.

Before WIDENER, PHILLIPS and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Plaintiff Carl Stillman appeals from the district court's denial of his motions for judgment n.o.v. or a new trial following a jury verdict in favor of the Norfolk & Western Railway Company (the "Railroad") in this action brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. (1982), (the "FELA"). Stillman contends that the district court committed numerous errors that entitle him to judgment n.o.v. or, at the least, a new trial. Because we find no error in the proceedings below, we affirm the judgment of the district court.

Stillman was employed by the Railroad as an apprentice carman. His job included installing large, heavy gears in railroad cars. The gears were installed by means of a forklift. The gears were attached to a chain, which was hooked to the blades of a forklift, and the forklift was used to lift the gears and place them in the railroad cars.

On February 29, 1982, Stillman was injured while installing a gear in a railroad car. While the gear was suspended from the blades of a forklift, the forklift quit operating and would not move up or down. With the gear still suspended from the forklift, Stillman placed himself partly under the forklift blades and took hold of the chain in an attempt to free the chain from the blades. At this

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

point, the blades fell on Stillman and injured him.

After the trial of Stillman's FELA claim, the jury returned a verdict for the Railroad, finding in response to a special interrogatory that the Railroad had not been negligent. Stillman moved for judgment n.o.v. or a new trial, but the district court denied his motions.

Stillman's primary argument is that the district court erred in refusing to grant a directed verdict or judgment n.o.v. in his favor based on application of the doctrine of res ipsa loquitur. We find this argument to be without merit.

[1][2] The FELA provides that employers covered by the Act shall be liable to employees who suffer injury as the result of an employer's negligence. 45 U.S.C. § 51 (1982). As in ordinary negligence cases, the doctrine of res ipsa loquitur may be applied in FELA cases to permit an inference of negligence on the part of the employer. *See, e.g., Jesionowski v. Boston & Maine Railroad*, 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416 (1947). In order for res ipsa loquitur to be applied, three conditions must be met: (1) the injury for which the plaintiff seeks recovery must be of a kind that ordinarily does not occur in the absence of negligence; (2) the injury must *837 have been caused by some agency or instrumentality within the exclusive control of the defendant; and (3) the injury must not have been due to any contribution or voluntary activity on the part of the plaintiff. *See, e.g., Jesionowski*, 329 U.S. at 456, 67 S.Ct. at 403; *Ashland v. Ling-Temco-Vought, Inc.*, 711 F.2d 1431, 1437 (9th Cir.1983); *Dugas v. Kansas City Southern Railway Lines*, 473 F.2d 821, 824 (5th Cir.), *cert. denied*, 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56 (1973).

[3] Based on our review of the record in this case, we are not convinced that the doctrine of res ipsa loquitur properly could be applied to the facts giving rise to Stillman's injury. Stillman himself testified that immediately before the forklift blades fell on him, he had placed himself partially under the blades and had taken hold of the chain attached to the blades in an attempt to free the chain from the blades. Thus, Stillman's own testimony reveals that the instrumentality which injured him was not within the Railroad's exclusive control at the time of the accident; Stillman himself had at least partial control over the chain and the forklift blades at the time the blades fell on him. In the absence of exclusive control by the Railroad over the instrumentality that injured Stillman, the doctrine of res ipsa loquitur

could not properly be applied to create an inference of negligence on the part of the Railroad.

[4] Moreover, even if res ipsa loquitur properly could be applied in this case, any resulting inference of negligence would not be strong enough to support a directed verdict or judgment n.o.v. in favor of Stillman. In a leading case applying the doctrine of res ipsa loquitur to a FELA claim, the Supreme Court observed that

"res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict."

*Jesionowski*, 329 U.S. at 457, 67 S.Ct. at 404 (quoting *Sweeney v. Erving*, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815 (1913)). Thus, as the *Jesionowski* Court recognized, application of res ipsa loquitur permits, but ordinarily does not compel, an inference of negligence on the part of the defendant. A res ipsa loquitur inference of negligence can get the plaintiff to the jury, but it will not support a directed verdict or judgment n.o.v. for the plaintiff unless the inference of negligence is so clear that no reasonable man could fail to accept it, and the defendant offers no evidence to rebut the inference. *See* W. Prosser, *Handbook of the Law of Torts* § 40, at 229-30 (4th ed. 1971).

[5] In this case, any inference of negligence on the part of the Railroad that would arise from application of the doctrine of res ipsa loquitur is not so clear that no reasonable man could fail to accept it, because, as noted previously, the instrumentality that injured Stillman was not within the exclusive control of the Railroad at the time the accident occurred. Furthermore, the Railroad offered evidence that it had exercised reasonable care to rebut any inference of negligence that might have arisen. Stillman's gang supervisor J.V. Moore testified that the forklift operators check the forklift brakes and mechanisms before beginning each tour of duty. Both Moore and supervisor D.D. Collins testified that if a defect is discovered in a forklift, the forklift is taken out of service and is not returned to service until the defect is repaired. In addition, Collins testified that the

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

forklifts are periodically lubed, oiled, and checked out.

Under these circumstances, we think that the district court correctly permitted the jury to decide this case. Contrary to Stillman's contention, the doctrine of res ipsa loquitur could not properly be applied to the facts of this case to allow the district court to overturn the jury's verdict and enter judgment n.o.v. for Stillman.

**\*838** [6][7] Stillman also argues that the district court committed prejudicial error in excluding his proffered testimony concerning a safer, alternative way to install gears in railroad cars. At trial, Stillman sought to testify that there was an alternative way to install gears in railroad cars using overhead cranes that would have been safer than the Railroad's practice of using forklifts. Before counsel for the Railroad objected, Stillman presented essentially all of the testimony on this point that was contained in his later offer of proof. The district court sustained the Railroad's objection to this testimony, noting that under the FELA, the relevant inquiry was whether the Railroad had exercised reasonable care, not whether the procedures used by the Railroad could have been made safer.

We think that the district court acted properly in sustaining the Railroad's objection to Stillman's testimony concerning a safer, alternative way to install gears in railroad cars. As the district court correctly observed, the question the jury had to decide was whether the Railroad had exercised reasonable care for the safety of Stillman, not whether the Railroad could have employed a safer method for installing gears. Thus, it was within the district court's discretion to exclude as irrelevant Stillman's testimony concerning the use of overhead cranes to install gears. In any event, Stillman introduced essentially all of the testimony concerning the alternative gear installation method that he wished to offer. In view of the fact that the district court never instructed the jury to disregard this testimony, we must conclude that any error the district court may have committed in sustaining the Railroad's objection to Stillman's proffered testimony was harmless.

[8] Stillman's remaining arguments are equally without merit. Stillman contends that the district court erred in refusing to permit his counsel to present an argument to the jury concerning Congress's intent in enacting the FELA. Stillman

has cited no authority to support his claim that his counsel should have been permitted to argue the intent of the FELA to the jury, and this court has found none. Our review of the record indicates that the district court adequately instructed the jury on the FELA and its applicability to this case. So long as the jury was properly instructed on the applicable law, we can see no reason why it would be either necessary or appropriate for the jury to hear an argument about Congress's intent in enacting the law. Furthermore, we perceive no prejudice to Stillman resulting from the district court's exclusion of counsel's argument concerning congressional intent.

[9] Stillman also argues that the district court should have permitted his counsel to inform the jury that recovery under the FELA was Stillman's only possible remedy and that Stillman would receive no workers' compensation benefits. Stillman's theory is that because the jury may have assumed he would receive workers' compensation, it may have been reluctant to grant him recovery under the FELA.

We find this argument ~~unpersuasive~~. Stillman's ineligibility for workers' compensation benefits was completely irrelevant to the issues presented in this case, and allowing the jury to consider such information could have prejudiced the Railroad. *See Weinell v. McKeesport Connecting Railroad Co.*, 411 F.2d 510, 512, (3d Cir.1969) (statement of counsel that FELA provided plaintiff's only possible means of recovery was improper). Moreover, we note that defendants in FELA cases are not permitted to inform the jury that a plaintiff has received benefits from a collateral source. *See, e.g., Eichel v. New York Central Railroad Co.*, 375 U.S. 253, 255-56, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963); *Schroeder v. Pennsylvania Railroad Co.*, 397 F.2d 452, 457 (7th Cir.1968). We perceive no reason for a different rule when the plaintiff in a FELA case seeks to inform the jury of the absence of benefits from a collateral source.

[10] Stillman's final argument is that the district judge's questioning of four witnesses, including himself, one of his co-workers, and two physicians, unfairly prejudiced **\*839** the jury against his case. Unfortunately, the failure of Stillman's counsel to object to any of this questioning at trial precludes our review of this issue on appeal.

Federal Rule of Evidence 614(c) provides that objections to the interrogation of witnesses by the

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

court may be made at the time of the interrogation or at the next available opportunity when the jury is not present. One purpose of this rule is to ensure "that objections are made in apt time to afford [the trial court] the opportunity to take possible corrective measures." Fed.R.Evid. 614(c) advisory committee note. If a party fails to object to the court's interrogation of a witness at trial, his objection will not be reviewed on appeal. *See, e.g., Vergott v. Deseret Pharmaceutical Co., 463 F.2d 12, 17 (5th Cir.1972); Faudree v. Iron City Sand & Gravel Co., 315 F.2d 647, 651-52 (3d Cir.1963).* In this case, because Stillman's counsel never objected to the district judge's questioning of witnesses during the trial, Stillman's claim that such questioning constituted prejudicial error will not be reviewed on appeal.

Stillman contends, however, that his counsel was not required to object to the district court's questioning of witnesses during the trial, because such questioning was extremely prejudicial, and counsel feared that an objection might antagonize the court and harm Stillman's case. In support of this argument, Stillman relies on *Miley v. Delta Marine Drilling Co., 473 F.2d 856, 857-58 (5th Cir.), cert. denied, 414 U.S. 871, 94 S.Ct. 93, 38 L.Ed.2d 89 (1973),* in which the court stated:
Where a trial judge's comments were so prejudicial as to deny a party an opportunity for a fair and impartial trial, the absence of objections will not preclude our review since counsel will be loathe to challenge the propriety of a trial judge's utterances for fear of antagonizing him and thereby prejudicing a client's case.

[11] The limited exception which the *Miley* court recognized to the general rule requiring that objections to the interrogation of witnesses by the court be made during the trial is unavailing to Stillman in this case. In *Miley,* the comments to which the appellant objected on appeal were as follows:
"Mr. Cooper: What is the purpose or function of the anchor winch?
"The Court: To pull the anchor up.
"Mr. Cooper: That is what I want him to say.
"The Court: Well any five year old idiot knows that. Don't waste my time and the jury's time on that. Isn't it to pull up the anchor?"

*Miley,* 473 F.2d at 857. The court in *Miley* held that these remarks were not sufficiently biased or notorious to permit appellate review under the plain error rule in the absence of any objection to

the trial judge's comments during the trial. Without reviewing in detail the comments and questions of the district court to which Stillman objects on appeal, it suffices to say that none of the district judge's remarks even approached the level of impropriety achieved by the district court in the *Miley* case. Like the court of appeals in *Miley,* we conclude that none of the comments or questions of the district judge to which Stillman objects on appeal were sufficiently biased or notorious to permit appellate review in the absence of any objection to these remarks by Stillman's counsel during the trial.

The judgment of the district court is affirmed.

AFFIRMED.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAURAN SMITH,                      )
        Plaintiff,                 )
                                   )
v.                                 ) Civil Action No.  06-10607-RGS
                                   )
MASSACHUSETTS BAY COMMUTER         )
RAILROAD COMPANY (MBCR)            )
and MASSACHUSETTS BAY TRANS-       )
PORTATION AUTHORITY (MBTA),        )
        Defendants,                )


DEFENDANTS' MOTION IN LIMINE #3

EVIDENCE REGARDING PLAINTIFF'S GROSS WAGE LOSS IS IRRELEVANT.


        The plaintiff claims that she has suffered the loss of past

and future wages.  The United States Supreme Court has made it

quite explicit that compensable losses in FELA cases are limited

to net wages after appropriate deduction for amounts that

plaintiff would have had to pay/expend had she earned the wages

(including taxes), during the normal course of her employment

but which she will not have to pay/expend out of any recovery.

Norfolk and Western Railway Company v. Liepelt, 444 U.S. 490, 62

L.Ed. 2d 589, 100 S.Ct. 775 (1980).  The Court in *Liepelt*

explained:

> "It is her after-tax income, rather
> than her gross income before taxes, that
> provide the only realistic measure of
> her ability to support her family.  It follows
> inexorably that the wage earner's income tax
> is a relevant factor in calculating the
> monetary losses suffered…"

Because it is only plaintiff's <u>net</u> income that is relevant to determining her wage loss, plaintiff should be precluded *in limine* from introducing any evidence of her gross wage loss, which will unduly inflate her damages and confuse the jury.

MASSACHUSETTS BAY
COMMUTER RAILROAD COMPANY
And MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,

By their attorney,

/s/Edward P. Harrington
Edward P. Harrington, Esquire
Attorney at Law
171 Milk Street, Second Floor
Boston, MA  02109
(617) 423-5959
BBO #559482

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 10, 2008 by first class mail.

/s/Edward P. Harrington
Edward P. Harrington, Esquire

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAURAN SMITH,                          )
    Plaintiff,                     )
                                   )
v.                                     )Civil Action No.  06-10607-RGS
                                   )
MASSACHUSETTS BAY COMMUTER             )
RAILROAD COMPANY (MBCR)                )
and MASSACHUSETTS BAY TRANS-           )
PORTATION AUTHORITY (MBTA),            )
    Defendants,                    )

## DEFENDANTS' MOTION IN LIMINE #4

Now comes the defendants, Massachusetts Bay Commuter Railroad Company ("MBCR") and Massachusetts Bay Transportation Authority ("MBTA") (collectively "Railroad Defendants") and respectfully request that this Court order that the plaintiff prohibited from mentioning in her opening statement, and/or introducing any evidence of during her Case in Chief, and/or arguing in her closing, any and all evidence of medical bills amassed as a result of her accident, because, medical bills that have been paid by the railroad employer are not recoverable under the FELA.  See Clark v. Burlington Northern, Inc., 726 F2d 448 (8th 1989).

MASSACHUSETTS BAY
COMMUTER RAILROAD COMPANY
And MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,

By their attorney,


/s/Edward P. Harrington
Edward P. Harrington, Esquire
Attorney at Law
171 Milk Street, Second Floor
Boston, MA  02109
(617) 423-5959
BBO #559482


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 10, 2008 by first class mail.

/s/Edward P. Harrington
Edward P. Harrington, Esquire

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAURAN SMITH,                        )
      Plaintiff,                     )
                                     )
v.                                   )Civil Action No.   06-10607-RGS
                                     )
MASSACHUSETTS BAY COMMUTER           )
RAILROAD COMPANY (MBCR)              )
and MASSACHUSETTS BAY TRANS-         )
PORTATION AUTHORITY (MBTA),          )
      Defendants,                    )

MOTION IN LIMINE #5

Now comes the defendants, Massachusetts Bay Commuter

Railroad Company ("MBCR"), and the Massachusetts Bay

Transportation Authority ("MBTA")(the "railroad defendants"),

and respectfully requests that this Honorable Court order that

there be no mention of plaintiff's or defendants' relative

financial conditions.

There is no issue in the pending action to which

plaintiff's present financial condition, defendant's financial

condition, or any disparity between the two is relevant.  Any

evidence of this or any other related information is irrelevant

and inadmissible. To admit evidence of plaintiff's present

financial condition, defendant's financial condition, or any

disparity between the two would serve only to improperly

influence and prejudice the jury, especially if plaintiff's

counsel in opening statement, or argument suggests that

defendant should respond in damages because it is wealth and

plaintiff is relatively poor.

                              MASSACHUSETTS BAY
                              COMMUTER RAILROAD COMPANY
                              And MASSACHUSETTS BAY
                              TRANSPORTATION AUTHORITY,

                              By their attorney,


                              /s/Edward P. Harrington
                              Edward P. Harrington, Esquire
                              Attorney at Law
                              171 Milk Street, Second Floor
                              Boston, MA  02109
                              (617) 423-5959
                              BBO #559482


                    CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF
system will be sent electronically to the registered
participants as identified on the Notice of Electronic filing
(NEF) and paper copies will be sent to those indicated as non
registered participants on March 10, 2008 by first class mail.

                              /s/Edward P. Harrington
                              Edward P. Harrington, Esquire

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAURAN SMITH,                    )
        Plaintiff,              )
                                )
v.                              ) Civil Action No.  06-10607-RGS
                                )
MASSACHUSETTS BAY COMMUTER      )
RAILROAD COMPANY (MBCR)         )
and MASSACHUSETTS BAY TRANS-    )
PORTATION AUTHORITY (MBTA),     )
        Defendants,            )

DEFENDANTS' MOTION IN LIMINE #6

        Now comes the defendants, Massachusetts Bay Commuter
Railroad Company ("MBCR") and Massachusetts Bay Transportation
Authority ("MBTA") (collectively "Railroad Defendants"), in the
above-entitled civil action, and respectfully file their *Motion
in Limine* to prohibit the plaintiff from introducing evidence
relevant to her FELA cause of action sounding in a violation of
the Safety Appliance Act:

    1.  The FELA theory of an alleged violation of the Safety
        Appliance Act would not "conform with the evidence"
        developed during the discovery of this case, as the
        Safety Appliance Act (SAA) 45 U.S.C. 1 et seq. and, 49
        USC §20302 et seq., requires functioning, mechanical
        and secure structural components that are specifically
        delineated in the Act (i.e. automatic couplers, grab
        irons and hand holds, *still steps*, efficient hand-
        brakes, secure ladders, secure running boards), and
        does *not* cover the alleged defect in this case; i.e.
        the interior stairs of a coach;

    2.  Equipment that is not specifically referenced in the
        act or the I.C.C., is not covered under SAA.  Eilers
        v. Hercules, Inc., 458 SW2d 221 (1971);

    3.  Interior coach stairs are not *sill stairs* as defined
        by the SAA. See 49 U.S.C.A. §20302 Kobe v. Canadian
        National Railway Company, slip copy, 2007 WL 2746640
        (D. Minn); Harold Bean v. Norfolk & Western Railway

Company v. Union Tank Car Company, 84 Ill.app.3d 395,
405 N.E.2d 418 (1980); Roger Grimming v. The Alton &
Southern Railway Company, et al., 204 Ill.App.3d 961,
562 N.E.2d 1086 (1990).

For the foregoing reasons, the defendant Amtrak
respectfully asks that Plaintiff's Motion to Amend be denied.

                              MASSACHUSETTS BAY
                              COMMUTER RAILROAD COMPANY
                              And MASSACHUSETTS BAY
                              TRANSPORTATION AUTHORITY,

                              By their attorney,


                              /s/Edward P. Harrington
                              Edward P. Harrington, Esquire
                              Attorney at Law
                              171 Milk Street, Second Floor
                              Boston, MA  02109
                              (617) 423-5959
                              BBO #559482



                    CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF
system will be sent electronically to the registered
participants as identified on the Notice of Electronic filing
(NEF) and paper copies will be sent to those indicated as non
registered participants on March 10, 2008 by first class mail.

                              /s/Edward P. Harrington
                              Edward P. Harrington, Esquire